SMITH, APPELLEE, *v.* CONLEY, APPELLANT.

[Cite as *Smith v. Conley,* 109 Ohio St.3d 141, 2006-Ohio-2035.]

(No. 2005–0247—Submitted November 29, 2005—Decided May 10, 2006.)

---

MOYER, C.J.

{¶ 1} The sole issue presented in this appeal is whether the termination of the attorney-client relationship for purposes of R.C. 2305.11 (time limitation on bringing a legal-malpractice claim) is dependent upon the filing of a motion to withdraw pursuant to a local rule of court.

I

{¶ 2} Appellant, attorney Craig Conley, represented appellee, Clayton Smith, in a criminal trial. At the conclusion of that trial, on August 21, 2002, Smith was found guilty of one count of passing bad checks in violation of R.C. 2913.11. Smith's sentencing hearing was scheduled for September 26, 2002. In the interim, Smith allegedly discovered exculpatory evidence and asked Conley to

request a new trial. Conley disputed the value of the evidence and that the evidence was "newly discovered," as contemplated by Crim.R. 33. This dispute culminated with two letters from Conley to Smith, dated August 26, 2002, and August 28, 2002, memorializing an August 26 telephone conversation between the two, purporting to terminate the attorney-client relationship. Without the assistance of counsel, Smith filed a pro se motion for a new trial on September 3, 2002. On September 6, 2002, Conley filed a motion to withdraw as counsel. It is not clear from the record, but Smith alleges in his brief that the trial court did not rule on Conley's motion to withdraw until April 11, 2005.

{¶ 3} Smith filed a complaint against Conley on September 5, 2003, alleging that Conley's legal malpractice had resulted in Smith's conviction. Conley filed a motion for summary judgment, arguing that the complaint had not been filed within the one-year limitations period set forth in R.C. 2305.11. The trial court found that for the purposes of R.C. 2305.11, Smith's cause of action had accrued no later than September 3, 2002 (when Smith filed his pro se motion for a new trial) and that Smith's complaint was untimely. Upon Smith's appeal, the court of appeals reversed the trial court's judgment, holding that the statute of limitations did not begin to run until September 6, 2002, when Conley filed his motion to withdraw. We accepted Conley's discretionary appeal.

## II

{¶ 4} R.C. 2305.11(A) is the statute of limitations for the filing of legal-malpractice claims: "[A]n action for * * * malpractice * * * shall be commenced within one year after the cause of action accrued * * *." "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus, citing *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941. *Zimmie* and *Omni–Food* require two factual determinations: (1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of these two dates is the date that starts the running of the statute of limitations. *Zimmie*, syllabus; *Omni–Food*, paragraph one of the syllabus.

{¶ 5} In his complaint, Smith avers that Conley committed legal malpractice when he failed to request a directed verdict and when he failed to offer for admission into evidence transcripts of tape-recorded conversations between Smith and the police, which Smith alleges clearly exonerate him. Trial strategy and the

presentation of evidence are usually in the sole discretion of the trial attorney. *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127 ("Decisions about what evidence to present and which witnesses to call * * * are committed to counsel's professional judgment"). Therefore, the admission or lack of admission of evidence by itself would not put the criminal defendant on notice of potential malpractice. However, since Smith's complaint is that Conley's malpractice resulted in a conviction, the date of the conviction is the date that Smith should have known that he had an injury caused by Conley. "Because [plaintiff's] allegations of negligence pertained to actions taken by [his attorney] during the pendency of the criminal case, we conclude he should have discovered these alleged errors, at the latest, when he was convicted of the [criminal] charge * * *." *Collins v. Morgan* (Nov. 16, 1995), Cuyahoga App. No. 68680, 1995 WL 680923. We conclude that the cognizable event that should have put Smith on notice that his attorney may have committed malpractice was his August 21, 2002 conviction. Having determined the date that corresponds to the first prong of the *Zimmie* test, i.e., when Smith should have known he had an injury caused by Conley, we consider the second prong, i.e., when the attorney-client relationship ended.

### III

{¶ 6} The attorney-client relationship is a relationship based on trust. "The overriding consideration in the attorney-client relationship is trust and confidence between the client and his or her attorney." *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 71, 541 N.E.2d 448. While, in general, clients may dismiss their attorneys at any time, the withdrawal of an attorney from representation is covered at least in part by the Code of Professional Responsibility. DR 2–110 lists circumstances under which an attorney must or may withdraw from representation. DR 2–110(A)(2) instructs attorneys not to withdraw without first guarding the client's welfare and allowing time for the client to employ other counsel. DR 2–110(A)(1) requires an attorney to request permission from the appropriate tribunal to withdraw as counsel when required by the rules of the tribunal. Smith argues that because the local rules of the Stark County Court of Common Pleas require an attorney to move to withdraw, the date a motion to withdraw is filed is the date of termination of the attorney-client relationship.

{¶ 7} Loc.R. 17.05(D) of the Stark County Court of Common Pleas states, "An attorney * * * shall not be permitted to withdraw except in open court in the presence of the defendant and upon written entry approved and filed NOT LESS THAN thirty (30) days before the date assigned for trial." (Emphasis sic.) Smith argues, and the court of appeals held, that this rule requires counsel to file a motion in the trial court before counsel may terminate an attorney-client

relationship for purposes of R.C. 2305.11. Smith avers that the rule is intended to protect his Sixth Amendment right to counsel. We do not agree.

{¶ 8} Many trial courts have adopted local rules regarding attorney withdrawal. Loc.R. 10 of the Cuyahoga County Common Pleas Court requires written notice to withdraw from both civil and criminal cases, but does not specify a time limit for filing the motion. Loc.R. 18 of the Franklin County Court of Common Pleas requires that a motion to withdraw be filed at least 20 days before trial and also does not differentiate between civil and criminal proceedings. Loc.R. 10(D) of the Hamilton County Court of Common Pleas requires an attorney in a civil case to file a written motion to withdraw and directs the judge to hear the motion within ten days. And attorneys in criminal cases must file a motion to withdraw and must show good cause. Loc.R. 1.31(I)(B) of the Montgomery County Court of Common Pleas does not impose a time requirement but requires attorneys wishing to withdraw in criminal cases to appear in open court in the presence of the defendant. Loc.R. 7.20 of the Summit County Court of Common Pleas allows withdrawal for good cause upon written motion.

{¶ 9} The differences between the local court rules, coupled with the other Stark County rules, cause us to conclude that when determining legal duties created by R.C. 2305.11, these local rules are administrative in nature—designed to facilitate case management. Local rules of court are promulgated by and applied by local courts for the convenience of the local bench and bar. They do not implicate constitutional rights. The purpose of Stark County Loc.R. 17.05(D) is to require the attorney to advise the court that the attorney-client relationship has ended. We reaffirm our statement in *Omni–Food* that the date of termination of the attorney-client relationship is a question of fact and is to be determined by considering the actions of the parties. Id., 38 Ohio St.3d at 388, 528 N.E.2d 941. For purposes of R.C. 2305.11, the termination of an attorney-client relationship is not controlled by local rules of court.

{¶ 10} In the instant case, Conley clearly informed Smith no later than August 28, 2002, that he no longer could represent him and would not file further actions on his behalf. The efficient administration of justice would not be served if the various local rules of court regarding attorney withdrawal determined the date of termination of the attorney-client relationship.

## IV

{¶ 11} Our holding today is limited to the application of R.C. 2305.11 and should not be applied to diminish adherence to local rules of court in other circumstances.

{¶ 12} We have held that local rules of court provide sufficient notice to a party regarding a summary-judgment hearing and deadlines for supporting filings.

*Hooten v. Safe Auto Ins. Co.,* 100 Ohio St.3d 8, 2003-Ohio-4829, 795 N.E.2d 648, ¶ 33. However, we also noted that relying on local rules requires individual analysis. Id. at ¶ 31. The date of termination of an attorney-client relationship for R.C. 2305.11 purposes is a fact-specific determination to be made according to the rules set forth by statute and by case law. The determination is not dependent on local rules of court. Attorneys are required to follow local rules and must file the appropriate motion with a court to withdraw from representation, but the date of termination of the attorney-client relationship for purposes of R.C. 2305.11 is determined by the actions of the parties.

{¶ 13} The judgment of the court of appeals is reversed, and the cause is remanded to the trial court for a determination of the termination date.

Judgment reversed
and cause remanded.

RESNICK, PFEIFER, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.
LUNDBERG STRATTON, J., dissents.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 14} I respectfully dissent. I do not agree that Stark County Court of Common Pleas Loc.R. 17.05(D) is merely "administrative in nature" or that an attorney-client relationship can be considered terminated when the attorney has not complied with the rule's express requirements for withdrawal from representation. In circumstances in which a local court rule dictates how and when an attorney may withdraw from a case, the client should be entitled to rely on continued representation if those conditions have not been met. I believe that the local rule establishes a bright line that clearly advises all parties when an attorney-client relationship has been terminated and eliminates the need for further factual inquiry into the actions of the parties.

{¶ 15} The majority considers the local court rule to be merely "administrative in nature—designed to facilitate case management." This, in effect, trivializes the significance of local rules. Local rules are a valid exercise of a court's rule-making power. *Vorisek v. N. Randall* (1980), 64 Ohio St.2d 62, 63, 18 O.O.3d 296, 413 N.E.2d 793. A judge has discretion to order sanctions, including dismissal, for a party's violation of a local rule. Id. at 65, 18 O.O.3d 296, 413 N.E.2d 793, (dismissing an appeal for failure to file a civil-appeal statement in compliance with local rule). See, also, *Eddie v. Veterinary Sys., Inc.* (Feb. 25, 1994), Trumbull App. No. 93–T–4886, 1994 WL 110911 (affirming dismissal for failure to comply with local rules to perfect appeal of arbitration award); *Richardson Bros., Inc. v. Dave's Towing Serv.* (1983), 14 Ohio App.3d 1, 14 OBR 3, 469 N.E.2d 850 (affirming trial court's dismissal for failure to file affidavit pursuant to local rule

to perfect appeal); *Meyers v. First Natl. Bank of Cincinnati* (1981), 3 Ohio App.3d 209, 3 OBR 238, 444 N.E.2d 412 (refusing to set aside dismissal granted when opposing party did not file memorandum contra motion to dismiss pursuant to municipal court rule). It is inconsistent to allow sanctions, even dismissal, for some rule violations while disregarding other rule infractions, concluding that the rule is merely "administrative in nature."

{¶ 16} If an attorney is concerned about establishing the date of the termination of the attorney-client relationship, that attorney should be diligent about filing and pursuing the final judicial order authorizing withdrawal as counsel of record.

{¶ 17} In addition, I believe that this opinion will create difficulty and confusion for trial court judges. If the termination of an attorney-client relationship is no longer dictated by the applicable local court rule, then the judge may be faced with the situation in which an attorney remains counsel of record in a case, yet the attorney-client relationship is considered terminated for malpractice purposes. Should a court sanction counsel for failing to appear for a hearing when the attorney has not withdrawn from the case pursuant to local court rule, but the attorney-client relationship is otherwise considered terminated? Does today's majority opinion permit the attorney to raise as a defense in a disciplinary proceeding that he or she terminated the attorney-client relationship even though there was no compliance with a local court rule? (See *Cuyahoga Cty. Bar Assn. v. Ballou*, 109 Ohio St.3d 152, 2006-Ohio-2037, 846 N.E.2d 519, in which an attorney was disciplined for failing to attend an eviction hearing after he had informed the client and opposing counsel that he would not represent the client unless payment was made).

{¶ 18} In addition, how will a client know whether his or her counsel will appear in court when the attorney has not withdrawn in accordance with local court rules? The client can easily access the text of the local rule, yet may have no understanding that, under today's decision, counsel can terminate the attorney-client relationship in contradiction of a local rule.

{¶ 19} I believe that when a local rule of court mandates the terms and conditions for attorney withdrawal, those terms and conditions must be satisfied before the relationship can be considered terminated. Adhering to local rules regarding termination of the relationship provides unequivocal notice to judges, attorneys, and clients of that termination. Therefore, I respectfully dissent.

––––––––––

Clayton B. Smith, pro se.

Reminger & Reminger Co., L.P.A., Clifford C. Masch, W. Bradford Longbrake, and Holly M. Wilson, for appellant.

Gallagher Sharp and Timothy J. Fitzgerald, urging reversal for amicus curiae, Ohio Association of Civil Trial Attorneys.